IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RONALD LEE MEDLIN, # B-60426, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-717-SMY |
| | ) | |
| JOHN BALDWIN, | ) | |
| ACTKINS, | ) | |
| JEFF DENNISON, | ) | |
| WARDEN CAMPBELL, | ) | |
| WARDEN WALKER, | ) | |
| and UNKNOWN PARTY (All Shawnee | ) | |
| (CC Majors John Doe), | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Ronald Lee Medlin, currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that his constitutional rights have been violated because the prison where he is housed does not offer the same amenities as other prisons of the same classification within the Illinois Department of Corrections ("IDOC"). The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering the allegations in Plaintiff's Complaint, the Court concludes that this action is subject to summary dismissal.

## The Complaint

When Plaintiff was sent to the Northern Receiving Center of the Illinois Department of Corrections, his security classification was determined to be "Medium." (Doc. 1, p. 5). He was then transferred to Shawnee. He has not incurred any disciplinary tickets or incidents. *Id.*

Plaintiff references a November 1, 2011, Consent Decree[1] that was incorporated into IDOC Administrative Directive 05.06.110. (Doc. 1, pp. 5, 11-14). Facilities that were formerly designated as "Level Two, Level Three, and Level Four" were deemed to be "Medium" under the classification system set forth in that directive. (Doc. 1, p. 5). Plaintiff alleges that despite the discontinuation of the former classifications, Shawnee is still being run as a "Level Two 'Punishment Prison.'" *Id.* Plaintiff further alleges that consequently, he is being arbitrarily "discriminated against and treated differently" from other IDOC prisoners classified as Medium, who are housed in Graham, Centralia, Danville, and other "Medium" security prisons. *Id.*

Plaintiff contrasts the conditions at Shawnee primarily with those at Graham and Centralia: He is locked in his cell most of the day, while Graham/Centralia prisoners are out of their cells all day except for chow lines. (Doc. 1, p. 5). Plaintiff does not have a key to his cell, and gets only 2 hours of dayroom per day. Prisoners at Graham and Centralia have a key to enter and exit their cells "all day long," and may use the dayroom at any time of the day, 7 days a week. *Id.* Plaintiff is limited to 30-45 minutes of gym, 5 days a week, while Graham/Centralia prisoners have yard and gym 3 times per day. Plaintiff may access the Shawnee commissary

---

[1] Plaintiff's attached grievance states that the Consent Decree was issued in *Moorhead v. McGinnis*, Case No. 86-cv-2020 (C.D. Ill.). (Doc. 1, p. 9). Contrary to Plaintiff's information, the Consent Decree in that case was approved on May 1, 1991, not November 2011. (*See* d/e 95 in Case No. 86-cv-2020, C.D. Ill.). The Consent Decree is not included with Plaintiff's pleading, nor is it available on the Central District of Illinois' electronic docket record on www.pacer.gov, due to its age. The Administrative Directive, however, bears an effective date of November 1, 2011, and references *Moorhead* as one of the authorities for the directive. (Doc. 1, p. 11). The directive states that its purpose is to designate the security levels for IDOC facilities, including maximum security, medium security, and minimum security. (Doc. 1, pp. 11-12).

only once or twice per month, and purchases are capped at $150.00 per visit; there is no such restriction at Graham, Centralia, or Danville, where prisoners may shop at commissary once per week. Shawnee prisoners may use the laundry twice a week, have telephone access for one hour twice a day, and may get ice once a day for 20 minutes. In contrast, Centralia and Graham have unlimited access to these amenities at any time. Those prisons have a television in the dayroom, but Shawnee does not.

Based on these differences, Plaintiff asserts that he is denied equal treatment under an "illegal classification system" that violates the Consent Decree and the Administrative Directive 05.06.110. (Doc. 1, p.5). He claims although he has not violated any rules, he has been subjected to more harsh conditions of confinement than he would face if he were in one of the other medium-security prisons. He argues that this "punishment" has been imposed without due process of law, because he was not afforded a hearing before being placed at Shawnee. (Doc. 1, pp. 5-6). Plaintiff also raises a "class of one" equal protection claim.

Plaintiff seeks injunctive relief to "disband" the Level system, apply equal treatment and policies to all prisoners classified as medium-security in the IDOC system, and for IDOC to adhere to the *Moorhead* Consent Decree. (Doc. 1, p. 7). He also requests compensatory and punitive damages. *Id.*

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that

4

is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

>**Count 1:** Plaintiff's placement in Shawnee has subjected him to unequal treatment in violation of the Fourteenth Amendment's Equal Protection Clause, because Shawnee does not have the same programs, policies, or access to privileges as other medium-security prisons in Illinois;
>
>**Count 2:** Plaintiff was subjected to discipline without due process of law, in violation of the Fourteenth Amendment, when he was placed at Shawnee without notice, hearing, or opportunity to contest the placement.

Neither Count states a claim upon which relief may be granted. Thus, the entire action will be dismissed with prejudice pursuant to § 1915A.

## Dismissal of Count 1 – Equal Protection

Plaintiff's claims rest on the notion that it is "illegal" for the defendants to administer Shawnee as what he describes as a "punishment prison" or "medium max" facility, under the prison classification scheme set forth in IDOC's Administrative Directive 05.06.110 and the Consent Decree in *Moorhead v. McGinnis*. (Doc. 1, pp. 5, 9). But this premise is fundamentally flawed. First, any purported violation of a state administrative rule, such as the Administrative Directive cited herein does not give rise to a federal constitutional claim. It has long been established that a federal court does not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). As such, Plaintiff's claim that the defendants' administration of programs and/or policies at Shawnee violates Administrative Directive 05.06.110 is legally frivolous in the context of this civil rights action.

Next, regarding the *Moorhead* Consent Decree, if Plaintiff believes a party to the Decree has violated its terms, his remedy is to seek enforcement of the Decree in the court that issued it

5

in the first instance. *See O'Sullivan v. City of Chicago*, 396 F.3d 843, 867-69 (7th Cir. 2005) ("[F]ederal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced.") (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004); *see also Komyatti v. Bayh*, 96 F.3d 955, 963-64 (7th Cir. 1996). Thus, alleged violation of the *Moorhead* Consent Decree fails to state a claim upon which relief may be granted in this action.

Plaintiff also argues that he has been the victim of unequal treatment and discrimination because the conditions at Shawnee are more onerous than those at certain other medium-security prisons within the IDOC system. According to Plaintiff, inmates housed at Graham and Centralia Correctional Centers enjoy more privileges and amenities than are available to Plaintiff and the other inmates housed at Shawnee.[2] This allegedly differential treatment, however, does not give rise to a constitutional claim for discrimination or denial of equal protection.

The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination, typically on account of race, national origin, or sex. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a

---

[2] According to the attached Administrative Directive 05.06.110, there are a total of 17 medium-security prisons within the IDOC system. (Doc. 1, pp. 12-13). Plaintiff describes only 3 of those other institutions in alleging that Shawnee's conditions are unfairly harsh.

> decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango*, 681 F.2d at 1104. In order to state an equal protection claim, a plaintiff must plead facts showing that he is a member of a protected class who is similarly situated to members of the unprotected class; that he was treated differently than members of the unprotected class; and that the differential treatment was motivated by discriminatory intent. *See Allen v. Hasemeyer*, 673 F. App'x 575, 577 (7th Cir. 2017) (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000)); *see also Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005).

Nothing in Plaintiff's Complaint suggest that any defendant singled out a particular group of inmates for placement at Shawnee with the intent to discriminate against that group and to subject them to unpleasant conditions, as compared with some other identifiable group. Plaintiff does not allege that inmates housed at Shawnee were selected based on their race, religion, or any other characteristic that might constitute a protected class. The only apparent criterion for placement at Shawnee is that an inmate must be classified as medium security - the same as inmates who happen to be housed at other medium-security institutions.

The Constitution does not require the state to provide identical privileges or amenities to all inmates housed in the various prisons within a certain classification. "[A] mere inconsistency in prison management," such as Plaintiff describes in contrasting Shawnee with some other medium-security prisons, "may not in itself constitute a cognizable equal protection claim." *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970). Once again, Plaintiff's allegations, fail to suggest any invidious classification as the reason for his placement or treatment at Shawnee. As such, he does not state a viable equal protection claim on that basis.

7

Alternatively, an equal protection violation may arise on a "class of one" theory, where an individual is singled out for different treatment for no rational reason. "The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" *Swanson v. City of Chetek*, 719 F.3d 780, 783-84 (7th Cir. 2013) (citing *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)).

Plaintiff asserts that he has been the victim of discrimination as a "class of one," but he sets forth no facts to support this theory, other than the fact that he was placed at Shawnee. Obviously, Plaintiff is not the only inmate housed there, and he describes conditions which apply equally to all the other Shawnee inmates who are confined with him. He claims to have been singled out as a "class of one" when compared with inmates at other institutions, but that does not constitute an equal protection claim; particularly when Plaintiff is being treated the same as the other inmates in the prison where he happens to be housed. Plaintiff is part of a large group of Shawnee inmates who all face the same conditions, and he has not shown that he was subjected to less favorable treatment than any of those similarly situated prisoners.

Far from suggesting some improper motivation on the part of Defendants in singling out Plaintiff for placement at Shawnee, the Complaint indicates that he, along with other Shawnee inmates, was placed there as part of the regular distribution of inmates among the many prisons in the IDOC system. Prison administrators have discretion to move inmates to any institution. *See DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).

> There are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized

assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 603 (2008).

The conditions Plaintiff outlines may indeed be less desirable than those found in the other institutions he describes. However, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel[.]" *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988). "[T]he society they once abused is obliged to provide constitutionally adequate confinement" to prisoners. *Id.* Nothing in the Complaint indicates that the conditions Plaintiff has experienced at Shawnee violate constitutional requirements,[3] or that his placement there ran afoul of principles of equal protection. Therefore, **Count 1** will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 2 – Due Process

Plaintiff asserts that because the conditions at Shawnee are not identical to the conditions at selected other medium-security facilities, and because he has not violated any disciplinary rules that would warrant punishment, his placement at Shawnee without any hearing or opportunity to contest the assignment has violated his due process rights. This claim also fails.

---

[3] Plaintiff does not claim that the conditions prevailing at Shawnee amount to "cruel and unusual punishment" in violation of the Eighth Amendment. Had he done so based on the facts pleaded, the claim would fail. Plaintiff states that he has access to out-of-cell recreation 5 days per week, and is allowed 2 hours of dayroom time each day. He does not assert that he has suffered any detrimental effects from this schedule, only that prisoners at other institutions have more generous access to these facilities. Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). None of Plaintiff's complaints about Shawnee conditions suggest an objectively serious deprivation of a basic human need.

When an inmate brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). In order for the due process clause to apply, there must be a protected liberty interest that is being infringed upon. *Meachum v. Fano*, 427 U.S 215, 223-24 (1976). Not every action that carries with it negative consequences creates a liberty interest for inmates. *Moody v. Daggett*, 429 U.S. 78, 86-88 (1976).

Here, Plaintiff does not allege that he has been denied all access to the gym, dayroom, telephone, laundry, commissary, or ice machine. These amenities and privileges are provided at Shawnee – even if on a less-frequent basis than at some other prisons. Thus, if Plaintiff has a liberty interest in these programs/privileges in the first place, the "deprivation" does not appear to be constitutionally significant. Restrictions on an inmate's access to commissary, laundry, telephone, an ice machine, or television arguably do not implicate a liberty interest at all. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

In *Sandin v. Conner*, 515 U.S. 472, 485 (1995), the Supreme Court explained that the Due Process Clause historically encompassed the notion that the State could not physically punish someone except in accordance with due process of law. *Id.* (quoting *Ingram v. Wright*, U.S. 651, 674 (1977)). However, " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Sandin*, 515 U.S. at 485 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977), and *Price v. Johnston*, 334 U.S. 266, 285 (1948)). Consequently,

> [t]he due process clause requires hearings when a prisoner loses more liberty than what was taken away by the conviction and original sentence. That's why the right comparison is between the ordinary conditions of a high-security prison in the state, and the conditions under which a prisoner is actually held.

*Marion v. Radtke,* 641 F.3d 874, 876 (7th Cir. 2011) (citing *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir.2005)).

Plaintiff's claim is based on a comparison of medium security facilities, not a contrast between Shawnee and one of the state's maximum security prisons. "The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). As noted above, prison officials have wide discretion regarding placement of inmates within the IDOC. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992). Within this framework, Plaintiff's claim that his placement in Shawnee deprived him of a liberty interest without due process is unsustainable. Accordingly, **Count 2** will also be dismissed with prejudice for failure to state a claim upon which relief may be granted.

When a Complaint fails to state a claim upon which relief may be granted, the plaintiff is ordinarily given an opportunity to amend the complaint in order to correct the deficiencies. *See* FED. R. CIV. P. 15(a). However, leave to amend need not be granted if it is clear that any amendment would be futile. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013); *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994). The Court finds that amendment would be futile in this case, as there is no legal support for a Fourteenth Amendment equal protection, discrimination, or due process claim based on Plaintiff's mere assignment to Shawnee, as

opposed to one of the other medium-security institutions within the IDOC. This matter will therefore be dismissed with prejudice and without leave to amend.

## Disposition

**COUNTS 1 and 2**, and this entire action, are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. All pending motions are **DENIED AS MOOT.**

Plaintiff is **ADVISED** that this dismissal shall count as one of his 3 allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: May 16, 2018**

                                                           s/ STACI M. YANDLE
                                                           United States District Judge